

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed May 19, 2021**

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| WAGGONER CATTLE, LLC, et al.,[1] | § | CASE NO. 18-20126-rlj11 |
| | § | Jointly Administered |
| | § | |
| | § | |

## MEMORANDUM OPINION

Todd J. Johnston, the Litigation Trustee of the Litigation Trust that was established under the above Debtors' confirmed chapter 11 plan, is here asking that the Court authorize his proposed disbursement of recovered litigation proceeds. Such disbursement, he says, should be made solely to general unsecured creditors; he requests that the Court so construe the Litigation Trust Agreement that governs the trust. The Debtors oppose the Trustee's proposal, arguing that the Trustee's construction of the Litigation Trust Agreement is wrong. The Debtors interpret the Litigation Trust Agreement to provide that litigation proceeds should be disbursed to *all*

---

[1] The debtors in this jointly administered chapter 11 case are Waggoner Cattle, LLC (Case No. 18-20126), Circle W of Dimmitt, Inc. (Case No. 18-20127), Bugtussle Cattle, LLC (Case No. 18-20128), and Cliff Hanger Cattle, LLC (Case No. 18-20129). These debtors and Michael Quint Waggoner (Case No. 18-20125) will be collectively referred to as "Debtors."

unsecured creditors, which would include not only general unsecured creditors but also unsecured priority creditors.

The Court has jurisdiction over this action under 28 U.S.C. §§ 1334(b) and 157(b)(2)(A), (O). The Litigation Trust Agreement provides for the Court's exclusive jurisdiction over the Litigation Trust Agreement. *See* Trustee's Ex. 3, Art. VIII ¶ 8.1. The Trustee's motion concerns the interpretation and enforcement of the Debtors' confirmed plan and its incorporated Litigation Trust Agreement. Such matters fall within the Court's jurisdiction. *See In re Craig's Stores of Tex., Inc.*, 266 F.3d 388, 391 (5th Cir. 2001); *In re Resorts Int'l Inc.*, 372 F.3d 154, 168–69 (3d Cir. 2004).

I.

The Court confirmed the Debtors' chapter 11 plan of reorganization on August 5, 2019. The Debtors are in the cattle business—both a dairy calf and a beef calf operation. Each Debtor entity serves a separate function within the business. The plan provides for the Debtors' continued operations and for payments to creditors in a way that satisfies the requirements of the Bankruptcy Code. The plan proposes to pay secured creditors, priority creditors, and administrative claimants in full, with general unsecured creditors paid a total of 5% of their allowed claims over ten years.

As part of the plan, the Debtors addressed multiple lawsuits that were pending at the time the cases were filed. They settled major pending actions brought by Lone Star State Bank of West Texas (Lone Star) and Rabo AgriFinance, LLC f/k/a Rabo AgriFinance, Inc. (Rabo). (Lone Star and Rabo are opposing parties in an action still pending before the Court.) The other major pending suit, and the one of significance here, was the Debtors' action against their prior accounting firm, Moseley & Riddle, LLP. This suit was retained by the Debtors under the plan.

Trustee's Ex. 5 at 41. Under the plan, the Debtors created a litigation trust with a litigation trustee to "consider and possibly prosecute" the claim against the accounting firm. *Id*. The litigation trust and the litigation trustee are governed by the Litigation Trust Agreement. Johnston was appointed to serve as the Litigation Trustee after the plan was confirmed, and the Litigation Trust Agreement was approved by the Court.

A.

The Litigation Trust Agreement states that any proceeds recovered from retained litigation are to be paid to holders of "Allowed Claims." Trustee's Ex. 3, Art. IV § 4.2. An Allowed Claim is defined as a Claim

> (a) either (i) proof of which has been timely filed with the Bankruptcy Court or has been deemed timely filed by a Final Order; or (ii) if not so filed, scheduled by the Debtors other than as disputed, contingent, or unliquidated; or (iii) any stipulation of amount and nature of a Claim filed prior to entry of the Confirmation Order; and (b) allowed by a Final Order, by the Confirmed Plan, **or** because no party in interest timely has filed an objection, filed a motion to equitably subordinate, or otherwise sought to limit recovery on such Claim **and was classified as a general unsecured claim under the Confirmed Plan**.

*Id*. at 4 (emphasis added).[2] An Allowed Claim thus includes any properly filed or scheduled (and not disputed by the Debtors) claim that has been (i) allowed by the Court's order, (ii) not challenged by an objection, or (iii) not made subject of a motion to subordinate. The last clause of part (b)—"or otherwise sought to limit recovery on such Claim and was classified as a general unsecured claim under the Confirmed Plan"—lends ambiguity to the definition and is the source of the dispute here.

The order confirming the Debtors' plan states that the claim against Moseley & Riddle, LLP, the accounting firm, was transferred to the Litigation Trust "and specifically preserved for

---

[2] A Claim, as a defined term of the Litigation Trust Agreement, follows the definition of a claim under § 101(5) of the Bankruptcy Code, which includes a right to payment, whether secured or unsecured. Trustee's Ex. 3 at 5.

the benefit of the Debtors' unsecured creditors." Trustee's Ex. 4 at 5. The plan, at page 4, defines "Unsecured Claim" as any claim that is *not* an administrative expense, secured claim, or a priority claim; and that it may be referred to as a "General Unsecured Claim." Trustee's Ex. 5 at 4. General unsecured creditors are separately classified for each debtor under the plan;[3] the identity, claim amount, and proportionate share of each unsecured creditor are identified on Exhibit A to the plan. The total amount owed to all unsecured creditors is $22.4 million. *Id*. at Ex. A. The plan provides for payments of $10,815.77 per month to Unsecured Creditors for ten years that are distributed on a pro-rata basis.

The plan states that the IRS holds an unsecured priority claim in the Michael Quint Waggoner individual case ($46,871.40) and the cases of debtor entities Waggoner Cattle ($700.00), Circle W of Dimmitt ($49,037.78), and Bugtussle ($400.00). It provides for a single payment to satisfy the IRS's claim in both the Waggoner Cattle and Bugtussle cases and for installment payments over forty-eight months at 4% interest to pay-off the IRS claims in the Michael Quint Waggoner and Circle W of Dimmitt cases.[4]

The IRS filed the following proofs of claim:

- Claim No. 3-2 in Circle W case (Case No. 18-20127), as amended, for $126,010.57, of which $91,128.73 is an unsecured priority claim and the balance as general unsecured

- Claim No. 7-1 in Michael Quint Waggoner case (Case No. 18-20125) for $46,871.40 as an unsecured priority claim

- Claim No. 1-1 in Waggoner Cattle case (Case No. 18-20126) for $700, of which $500 is an unsecured priority claim and the balance as general unsecured

- Claim No. 2-1 in Bugtussle Cattle case (Case No. 18-20128) for $600, of which $400 is an unsecured priority claim and the balance as general unsecured

---

[3] Unsecured Creditors are designated as Class 6 for Michael Quint Waggoner, Class 4 for Waggoner Cattle, LLC, Class 4 for Circle W of Dimmitt, Inc., Class 5 for Bugtussle Cattle, LLC, and Class 3 for Cliff Hanger Cattle, LLC. Trustee's Ex. 5 at 24–26.
[4] The plan does not treat the IRS's claim filed in the Cliff Hanger Cattle case.

- Claim No. 1-1 in Cliff Hanger Cattle case (Case No. 18-20129) for $600, of which $400 is an unsecured priority claim and the balance as general unsecured

B.

Johnston recovered $111,250 from the retained litigation; he has incurred about $50,700 in attorney's fees and costs. Johnston twice provided notice to all general unsecured creditors of his proposed distribution of the litigation proceeds (less fees and expenses); twenty-three of the thirty-seven creditors provided the required information—name, address, and tax identification number. ECF No. 378, Exs. B, C. The Trustee proposes and asks that the Court approve the distribution to the twenty-three responsive *general* unsecured creditors.

II.

A.

The Debtors object to the Trustee's proposal. They contend that the definition of Allowed Claims under the Litigation Trust Agreement requires that unsecured priority claimants, particularly the IRS, must also be paid from the proceeds and in accordance with the priority scheme directed by the Bankruptcy Code.

The Debtors say that the last part of the Litigation Trust Agreement's definition of "Allowed Claim"—"and was classified as a general unsecured claim under the Confirmed Plan"—was added to "amplify the definition" after the word "**or**" in the quoted definition above. ECF No. 380 at 4. At the hearing, counsel argued that the purpose of adding the phrase was to clarify that general unsecured creditors are included as allowed claimants but, apparently, not as the exclusive beneficiaries of the trust. This interpretation means that the IRS's entire claim, both the priority and general unsecured parts of the claim, would have to be paid from any trust proceeds. And if such distribution is made in accordance with the Code's priority scheme, the

IRS's priority portion would be paid first, thus exhausting the proceeds.

B.

The Court disagrees with the Debtors' position. A basic construction of the definition reveals that an Allowed Claim means a claim that satisfies *both* subpart (a) *and* subpart (b). The definition does *not* introduce the two subparts with "either" to signify that either (a) or (b) suffices. Rather, the two subparts are joined by the conjunction "and" to signify that both parts must be met to satisfy the definition of "Allowed Claim." The definition clarifies, for example, that a timely-filed proof of claim entitles its holder to payment if its claim has not been objected to. Counsel for the Debtors says that the language regarding general unsecured creditors was added to ensure that general unsecured creditors were "considered" as allowed claimants. The Court goes one step further, however. It construes the provision to mean that *only* general unsecured creditors are to be paid with the litigation proceeds.

The Debtors state that they "obviously want the claims of the Internal Revenue Service acknowledged" and that the Litigation Trustee's "interpretation of the 'Allowed Claims' definition fails to make such an acknowledgement." ECF No. 380 at 4. They contend that the phrase—"and (it) was classified as a general unsecured claim"—further modifies a claim that a party-in-interest might "otherwise" seek to limit the recovery of. *Id*. In doing so, they take the liberty of inserting "it" to further make their point. The Trustee, however, contends that the phrase should be a third subpart, part (c), and thus a requirement for any claim to become an Allowed Claim.

The definition is, at best, rendered ambiguous by the added phrase. It is grammatically awkward and makes it practically impossible to be construed to mean, as the Debtors wish, that priority tax claims must be paid with the proceeds.

The crux of the Debtors' position is that the reference to any "such Claim [that is] classified as a general unsecured claim" is intended to amplify only those claims which no party in interest has attacked. This interpretation, according to the Debtors, allows for the possibility that "Allowed Claims" may include both general unsecured claims *and* unsecured priority claims. But this construction raises other problems. The holder of a timely-filed priority claim that has not been allowed by order or by the plan could not be paid unless it was also *not* made subject of a motion to subordinate, or "otherwise" attacked "and was classified as a general unsecured claim." This is nonsensical. A general unsecured claim is *not* an unsecured *priority* claim.

The order confirming the Debtors' plan states, as noted above, that the claims and causes of action transferred to the Litigation Trust are preserved for the benefit of the Debtors' unsecured creditors. Trustee's Ex. 4 at 5. The plan defines an unsecured claim as a claim that is *not* an administrative, secured, or priority claim. Trustee's Ex. 5 at 4.

The plan provides that, from the Debtors' operations, all secured, administrative, and priority claims will be paid in full. General unsecured creditors are paid 5% of their claims over ten years. The Debtors refer to § 726 of the Code to justify paying the IRS first from the funds (as estate property). ECF No. 380 at 4. But section 726 is not applicable in chapter 11. *In re Santa Fe Med. Grp., LLC*, 557 B.R. 223, 228 (Bankr. D.N.M. 2016); *In re Manhattan Jeep Chrysler Dodge, Inc.*, 602 B.R. 483, 491 (Bankr. S.D.N.Y. 2019). More important, the Debtors' plan does not provide for this.[5] This is a chapter 11 case with the Debtors' obligations spelled out by the very plan they proposed. Further, that the litigation proceeds are earmarked for general unsecured creditors does not alter the required priority scheme of the Code. The

---

[5] Section 726 can be read to support the Debtors' argument that the reference to an "unsecured claim" may incorporate any type of unsecured claim, including an unsecured priority claim. *See* § 726(a)(1), (2).

Debtors' plan is not a liquidating plan with known, finite assets to administer. The Debtors' continued operations generate the necessary funds for payments to creditors. The Court found the plan to be feasible. It also found that the plan's treatment of creditors—the payment scheme for making payments to creditors—complies with the provisions of the Code.

An operating plan typically provides for simultaneous payments to different classes and priorities of creditors. The Code allows this; it does not require that a particular source of funds *must* be paid to creditors in accordance with the Code's priority scheme. *See* 11 U.S.C. § 1129.

The Trustee's construction that the added language of the definition—"and was classified as a general unsecured claim under the Confirmed Plan"—is a third requirement for allowance is the practical and logical interpretation. The litigation proceeds supplement the Debtors' operations and serve as an additional source of payment. Such funds, under the Code and by the terms of the confirmed plan, the order confirming plan, and the plan-created Litigation Trust, must go to the general unsecured creditors.

C.

The Trustee makes one other important argument. The Litigation Trust Agreement, at section 6.1, says that for income tax purposes the retained litigation causes are transferred by the Debtors to the Debtors' creditors and then by the creditors to the Litigation Trust. Trustee's Ex. 3 at 16. This means the creditors are both the grantors and beneficiaries of the trust and would thus owe any income taxes due as a result of a distribution. It would be both illogical and punitive to impose any such tax liability on general creditors if all the proceeds went to pay the IRS's unsecured *priority* claim. The Court is not here deciding the income tax implications of the trust distributions. But such provision is strong evidence that the general unsecured creditors are the sole beneficiaries of the trust.

III.

The Court approves the relief requested by the Trustee's motion and will issue its order authorizing his disbursement of the litigation proceeds to allowed general unsecured creditors.

### End of Memorandum Opinion ###